IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


BEULAH E. BROWN,

        Plaintiff,

vs.                                      Case No. 10-1037-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On April 7, 2009 administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 10-18). Plaintiff alleges that she has been disabled since November 29, 2006 (R. at 10). Plaintiff is insured for disability insurance benefits through June 30, 2010 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 12). At step two,

the ALJ found that plaintiff had the following severe impairments: torn meniscus of the left knee, obesity and right ankle replacement (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining that plaintiff had the RFC to perform the full range of sedentary work (R. at 15), the ALJ found at step four that plaintiff is capable of performing past relevant work as a bookkeeper (R. at 17). The ALJ also found that all sedentary work would be available to the plaintiff (R. at 17). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17).

**III. Did the ALJ err in his step four findings?**

At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity. Henrie v. United States Dep't of HHS, 13 F.3d 359, 361 (1993). Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these three phases, the ALJ must make specific findings. Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir.

2007); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). An ALJ can comply with these requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis. Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003). When the ALJ fails to make findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis. Bowman v. Astrue, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.). However, when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error. Martinez v. Astrue, 316 Fed. Appx. 819, 824 (10th Cir. Mar. 19, 2009); see Murrell v. Shalala, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

At step four, the ALJ made the following findings:

> The claimant worked as a bookkeeper from October 1997 to March 2000 and again in November 2006. (Exhibit 15E) In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. Bookkeeper is described as sedentary work by the Dictionary of Occupational Titles (DOT) and this description is consistent with the claimant's report of her past work. (Exhibit 4E) Because the claimant has the residual functional capacity for the full range of sedentary work, the claimant's past work as a Bookkeeper is not precluded by her residual

> functional capacity. Additionally, all
> unskilled sedentary work would be available
> to the claimant.

(R. at 17).

The ALJ cited to the record indicating that plaintiff had previously worked as a bookkeeper from 1997-2000 and again in 2006 (Exh. 15E, R. at 239-240). The ALJ stated that a bookkeeper is sedentary work according to the Dictionary of Occupational Titles (DOT), and that the description of a bookkeeper is consistent with plaintiff's report of her past work as set out in Exhibit 4E.

A bookkeeper is defined in the DOT as sedentary work, involving sitting most of the time, but may involve walking or standing for brief periods of time. DOT 210.382-014, 1991 WL 671821. The ALJ states that this description is "consistent with the claimant's report of her past work," citing to Exhibit 4E. Exhibit 4E, a work history report prepared by the plaintiff and dated March 17, 2007, references a bookkeeper/teller position (R. at 186), and provides detailed information about that job as set forth below:

> [Hours per day] 8   [Days per week] 5
>
> [Describe this job]: stood at drive up window
> collecting money or payments, sort checks by
> numbers, working overdrafts.  Balancing
> drawer, customer service.
>
> [In this job, how many total hours each day
> did you]    Walk:                          1
>             Stand:                         4

```
              Sit:                             1
              Write, type or handle
              small objects:                   2
```

>    [Lifting and carrying]: carried money drawer
>    from safe to drive through window and back
>
>    [Heaviest weight lifted and weight you
>    frequently lifted]: 10 lbs.

(R. at 190).

The court finds serious errors by the ALJ in his analysis. Although the ALJ indicated that plaintiff could perform past relevant work as a bookkeeper, he referenced plaintiff's description of that job in Exhibit 4E. Exhibit 4E references a bookkeeper/teller job. This job, as described by the plaintiff, involves standing and walking for 5 hours in the day, and sitting for only 1 hour. Such work would be considered light work, which involves a good deal of walking or standing, and not sedentary work, which primarily involves sitting. 20 C.F.R. § 404.1567 (a,b). Furthermore, the job description provided by the plaintiff more closely matches the job description of a teller. DOT 211.362-018, 1991 WL 671837. A teller, as described in the DOT, is defined as light work which requires walking or standing to a significant degree.[1] The court finds that the evidence

---

[1] Although the ALJ did not mention plaintiff's testimony when making his step four findings, at the hearing, plaintiff, when testifying about her work as a "bookkeeper" at her father's business, stated that: "I don't recall doing bookkeeping but because it was a business I done so much in. I took care of my mother" (R. at 27). She further indicated that her father paid her for her service because he knew that she had to have money to

cited by the ALJ in Exhibit 4E clearly does not support his finding that plaintiff's prior job was a sedentary job of bookkeeper. For this reason, the court finds that the ALJ's step four findings are not supported by substantial evidence, and the case should therefore be remanded for further hearing.

The ALJ also stated that all unskilled sedentary work would be available to the plaintiff (R. at 17). However, if this case were to proceed to step five and a determination of whether plaintiff can perform other jobs that exist in significant numbers in the national economy, plaintiff argues that her age, education, work history and an RFC for sedentary work direct a finding of disability under the grids (Doc. 15 at 4).

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). To meet this

---

live on (R. at 27). Thus, it is not clear from plaintiff's testimony that she performed the job of a bookkeeper.
Defendant, in their brief, noted that plaintiff's attorney stated that plaintiff performed a sedentary job of bookkeeper/ receptionist (R. at 23-24). However, plaintiff's attorney at the hearing also stated that the job was "just kind of helping her dad out type of thing" (R. at 23), and plaintiff testified that she did not recall doing bookkeeping, but took care of her mother (R. at 27). As plaintiff argues, 20 C.F.R. § 404.1573(c) indicates that if your work is done under special conditions that take into account your impairment, the agency may find that it does not show that the claimant has the ability to do substantial gainful activity (Doc. 15 at 5-6). Given the ALJ's failure to discuss plaintiff's testimony when making his step four findings, such evidence should be considered when this case is remanded.

burden, the Commissioner may rely on the Medical-Vocational Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. Thompson, 987 F.2d at 1487. 20 C.F.R. Pt. 404, Subpt. P, App. 2 contains the following language:

> (g) Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains. However, recently completed education which provides for direct entry into sedentary work will preclude such a finding. For this age group, even a high school education or more (ordinarily completed in the remote past) would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education.

(2010 at 593).

Plaintiff was born on October 12, 1954 (R. at 52). Thus, she was 52 years old on the alleged onset date of disability, November 29, 2006 (R. at 10). The ALJ made no findings regarding her education or whether plaintiff had transferable work skills, although the court would note that plaintiff testified that she was a high school graduate (R. at 26). On remand, if the ALJ is unable to find that plaintiff can perform past relevant work, the

ALJ will have to determine if she is disabled under the grids after considering her age, education and whether she has transferable work skills.

**IV. Did the ALJ err by failing to include any mental limitations in plaintiff's RFC?**

The ALJ's RFC findings for the plaintiff limited plaintiff to sedentary work, but did not include any mental limitations. Plaintiff argues that the ALJ erred by failing to consider mental health center records showing that plaintiff had been given GAF scores in the 40s[2] during 2006 and 2007 (R. at 302-314).

Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. For this reason, such a GAF score should not be ignored. <u>Lee v.</u>

---

[2]GAF (global assessment of functioning) scores can be found in the <u>Diagnostic and Statistical Manual of Mental Disorders</u>. The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job).

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).
Because a GAF score may not relate to a claimant's ability to
work, the score, standing alone, without further explanation,
does not establish whether or not plaintiff's impairment severely
interferes with an ability to perform basic work activities. See
Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15,
2004). GAF scores are not considered absolute determinants of
whether or not a claimant is disabled. Heinritz v. Barnhart, 191
Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

In his decision, the ALJ did not reference the GAF scores;
however, the ALJ did note that plaintiff received treatment for
depression, and cited to the records from the mental health
center. The ALJ found that plaintiff's mental impairment did not
cause more than minimal limitation in plaintiff's ability to
perform basic mental work activities and was therefore not severe
(R. at 13). Nothing in the mental health treatment records
indicates that plaintiff's mental impairment results in any
limitations in her ability to work (R. at 300-314). Furthermore,
plaintiff failed to cite to any evidence indicating that
plaintiff's mental impairment results in any limitations in her
ability to perform work activities. Absent such evidence, there
is no basis for the ALJ to include mental limitations in
plaintiff's RFC.

IT IS THEREFORE ORDERED that the judgment of the

Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 7th day of March, 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge